UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| IN RE: ) | | |
| ) | | |
| KENNETH R. WOODS, ) | CASE NO. 08-32426 | |
| ) | CHAPTER 7 | |
| Debtor ) | | |
| _____) | | |
| ) | | |
| ISAACS CARS, INC. ) | | |
| f/k/a AUTORAMA, INC. ) | | |
| ) | A.P. No. _____ | |
| Plaintiff ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| KENNETH R. WOODS ) | | |
| Defendant ) | | |
| _____) | | |

**Complaint For**
**Exceptions To Discharge Of Debt Under 11 U.S.C. §523**
**And For Denial Of Discharge Under 11 U.S.C. §727**

Plaintiff, Isaacs Cars, Inc. f/k/a Autorama, Inc. ("Isaacs Cars"), by counsel, states and alleges as follows:

**General Allegations**

1.     This adversary proceeding is brought in relation to the Chapter 7 case of Kenneth R. Woods ("Ken"), proceeding number 08-32426, and is brought under 11 U.S.C. §523(a)(2)(A), 11 U.S.C. §523(a)(4), 11 U.S.C. §523(a)(6), 11 U.S.C. §727(a)(4)(a), and 11 U.S.C. §727(a)(7). The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §157 and §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

2.     This action is timely filed.

3.     At all times relevant, Ken has been an owner of, officer of, and received

1

compensation from AutoSource-USA, LLC ("AutoSource").

4.  At all time relevant, AutoSource was engaged in the business of selling used motor vehicles to retail customers.

5.  On or about April 1, 1999, AutoSource executed and delivered to Isaacs Cars a Revolving Floor Plan Loan And Security Agreement (the "Floor Plan Agreement") to finance AutoSource's purchases of motor vehicles. Part of the Floor Plan Agreement at page 8 was a Personal Guaranty and Subordination Agreement which was signed by Ken (the "Ken Guaranty"). A true and correct copy of the Floor Plan Agreement, including the Ken Guaranty, is attached hereto as **Exhibit 1** and incorporated herein by reference.

6.  In general, and without limiting the specifics of each particular transaction, AutoSource and Ken engaged in a scheme and practice to fraudulently obtain funds from Isaacs Cars in connection with 27 total motor vehicles the result of which is that Isaacs Cars has lost $98,050 plus interest, costs, and expenses (including reasonable attorneys' fees) (the "Scheme"). Attached hereto as **Exhibit 2** is an Inventory Aging With Cost report (the "Inventory Report") prepared by Isaacs Cars listing the 27 motor vehicles (the "27 Isaacs Motor Vehicles") and the principal amount lost. In general, the Scheme involved AutoSource obtaining money from Isaacs Cars for each of the 27 Isaacs Motor Vehicles knowing that AutoSource had already sold, or would sell, the 27 Isaacs Motor Vehicles to purchasers and not pay Isaacs Cars.

7.  Ken was involved in whole or in material part in the Scheme.

8.  Without limiting the scope of the entire Scheme, the following is an example regarding the Scheme concerning the first (1st) vehicle on the Inventory Report:

  a.  Sometime in Spring 2007, AutoSource purchased a 2003 Nissan Altima (VIN#1N4AL11D93C153181) (the "2003 Altima") from A-Better Buy Auto Sales, Inc. for $8,006. Attached hereto as **Exhibit 3** is a true and correct copy of a sales agreement (including Odometer

2

Disclosure Statement) evidencing said purchase.

  b. At the time AutoSource purchased the 2003 Altima, Ken knew that AutoSource was insolvent.

  c. On or about June 6, 2007, AutoSource sold the 2003 Altima to a retail customer, Papa Fall, for $10,000 pursuant to a Motor Vehicle Retail Installment Contract obligating Mr. Fall to make installment payments of the balance due after Mr. Fall's downpayment.

  d. On or about June 12, 2007, AutoSource sold to Chase Auto Finance its rights to receive Mr. Fall's remaining payments in exchange for payment by Chase Auto Finance to AutoSource for the amount of $9,248.40. The Chase Auto Finance payment to AutoSource was made on or about June 12, 2007, by ACH wire transfer.

  e. Attached hereto as **Exhibit 4** and incorporated herein by reference are true and correct copies of documents reflecting AutoSource's sale to Mr. Fall and to Chase Auto Finance. Ken's signature appears on the Title Lien Statement included as part of Exhibit 4 evidencing that a lien would be granted to JPMorgan Chase Bank, N.A.

  f. Pursuant to KRS 186A.220, AutoSource was required to deliver to Mr. Fall the properly assigned certificate of title and other documents necessary to transfer the vehicle into Mr. Fall's name or, with Mr. Fall's consent, deliver them to the appropriate county clerk for titling in Mr. Fall's name. Under KRS 186A.990(6), failure to do so is a Class A misdemeanor.

  g. On or about June 14, 2007, after already selling the 2003 Altima and already receiving payment from Chase Auto Finance and in violation of KRS 186A.220, AutoSource delivered original title paperwork to Isaacs Cars for the 2003 Altima and received $8,000 from Isaacs Cars. Attached hereto as **Exhibit 5** and incorporated herein by reference are true and correct copies of the title paperwork delivered by AutoSource to Isaacs Cars.

  h. Leland Isaacs at Isaacs Cars thereafter repeatedly inquired of AutoSource as

to the status of the 2003 Altima, but AutoSource refused to accurately explain the situation and continued with AutoSource's Scheme to defraud Isaacs Cars. Ken participated in these efforts to deceive Isaacs Cars or knowingly allowed them to continue for the purpose of continuing the Scheme.

      i.      Pursuant to the Ken Personal Guaranty, "any sums received by the undersigned [Ken] from Dealer [AutoSource] shall be held by the undersigned [Ken] in trust for the benefit of Lender [Isaacs Cars]." Ken received sums from AutoSource after June 14, 2007, which he was obligated to hold in trust for Isaacs Cars, and he has breached that trust.

    9.    Without limiting the scope of the entire Scheme, the following is an example regarding the Scheme concerning the fifteenth (15th) vehicle on the Inventory Report:

      a.      On or about March 14, 2007, AutoSource purchased from the Clark County Auto Auction a 2000 Nissan XTerra truck (VIN #5N1ED28YXYC525931) (the "2000 XTerra").

      b.      At the time AutoSource purchased the 2000 XTerra, Ken knew that AutoSource was insolvent.

      c.      On or about June 27, 2007, AutoSource sold the 2000 XTerra to Juan D. Villa for $7,500 and received full payment for the purchase on June 29, 2007, by a $7,500 check #4655156 from Capital One Auto Finance.

      d.      Upon information and belief formed after inquiry reasonable under the circumstances, Ken's signature appears on a bill of sale at the bottom line beside the phrase "Accepted By" for the sale to Mr. Villa.

      e.      Attached hereto as **Exhibit 6** and incorporated herein by reference are true and correct copies of documents reflecting AutoSource's sale to Mr. Villa and payment from Capital One Auto Finance.

      f.      Pursuant to KRS 186A.220, AutoSource was required to deliver to Mr. Villa

the properly assigned certificate of title and other documents necessary to transfer the vehicle into Mr. Villa's name or, with Mr. Villa's consent, deliver them to the appropriate county clerk for titling in Mr. Fall's name. Under KRS 186A.990(6), failure to do so is a Class A misdemeanor.

   g. On or about October 4, 2007, after already selling the 2000 XTerra and already receiving payment from Capital One Auto Finance and in violation of KRS 186A.220, AutoSource delivered original title paperwork to Isaacs Cars for the 2000 XTerra and received $5,785 from Issacs Cars. Attached hereto as **Exhibit 7** and incorporated herein by reference are true and correct copies of the title paperwork delivered by AutoSource to Isaacs Cars.

   h. Leland Isaacs at Isaacs Cars thereafter repeatedly inquired of AutoSource as to the status of the 2000 XTerra, , but AutoSource refused to accurately explain the situation and continued with AutoSource's Scheme to defraud Isaacs Cars. Ken participated in these efforts to deceive Isaacs Cars or knowingly allowed them to continue for the purpose of continuing the Scheme.

  10. Without limiting the scope of the entire Scheme, the following is an example regarding the Scheme concerning the twenty-fourth (24th) vehicle on the Inventory Report:

   a. On or about December 20, 2006, AutoSource purchased from John Douglas a 1996 Chevrolet Silverado Pickup truck (VIN #2GCEK19R5T1228955) (the "1996 Chevy Pickup").

   b. At the time AutoSource purchased the 1996 Chevy Pickup, Ken knew that AutoSource was insolvent.

   c. On or about January 29, 2007, AutoSource had issued by the Commonwealth of Kentucky a Certificate of Title for the 1996 Chevy Pickup listing AutoSource as the owner.

   d. On or about January 31, 2007, Autosource sold the 1996 Chevy Pickup to Dana Smith for $6,680. AutoSource received $4,000 at delivery and was paid in full by Ms. Smith by a $2,210 payment received by AutoSource on or about January 23, 2008.

   e. Upon information and belief formed after inquiry reasonable under the circumstances, Ken's signature appears on (i) a bill of sale at the bottom line beside the phrase "Accepted By" for the sale to Mr. Smith and (ii) on a receipt dated January 23, 2008, evidencing AutoSource receiving $2,210 from Mr. Smith as final payment.

   f. Attached hereto as **Exhibit 8** and incorporated herein by reference are true and correct copies of documents reflecting AutoSource's sale to Ms. Smith.

   g. Pursuant to KRS 186A.220, AutoSource was required to deliver to Ms. Smith the properly assigned certificate of title and other documents necessary to transfer the vehicle into Ms. Smith's name or, with Ms. Smith's consent, deliver them to the appropriate county clerk for titling in Ms. Smith's name. Under KRS 186A.990(6), failure to do so is a Class A misdemeanor.

   h. On or about November 29, 2007, after already selling the 1996 Chevy Pickup Truck and already receiving most of the payment from Ms. Smith and in violation of KRS 186A.220, AutoSource delivered original title paperwork to Isaacs Cars for the 1996 Chevy Pickup Truck and received $2,850 from Isaacs Cars. Attached hereto as **Exhibit 9** and incorporated herein by reference are true and correct copies of the title paperwork delivered by AutoSource to Isaacs Cars.

   i. Leland Isaacs at Isaacs Cars thereafter repeatedly inquired of AutoSource as to the status of the 1996 Chevy Pickup Truck, but AutoSource refused to accurately explain the situation and continued with AutoSource's Scheme to defraud Isaacs Cars. Ken participated in these efforts to deceive Isaacs Cars or knowingly allowed them to continue for the purpose of continuing the Scheme.

  11. AutoSource was insolvent at all relevant times while the Scheme was occurring. On account of this insolvency, and also on account of holding "in trust" language of the Ken Guaranty and also on account of the special trust held by Isaacs Cars in Ken, Ken had fiduciary duties to

6

Isaacs Cars concerning the 27 Isaacs Motor Vehicles and all of the sums AutoSource received in connection with the 27 Isaacs Motor Vehicles and all of the sums that Ken received from AutoSource on or after June 14, 2007.

12.     Ken is indebted to Isaacs Cars under the terms of the Ken Guaranty in the amount of $98,350 plus interest from at least December 18, 2007, at the rate of 12% per annum, compounded monthly, plus attorney fees and expenses (the "Indebtedness").

13.     In addition, Ken damaged Isaacs Cars in the amount of the Indebtedness by acts of false pretenses, and/or false representations, and/or actual fraud, and/or fraud or defalcation while acting in a fiduciary capacity, and/or embezzlement and/or larceny, and/or his willful and malicious injury to Isaacs Cars.

## Claims Under 11 U.S.C. §523

14.     Isaacs Cars realleges each and every one of the allegations set forth in Paragraphs 1 through 13 herein.

15.     The actions described above constitute grounds to hold all of Ken's Indebtedness to Isaacs Cars to be excepted from discharge11 U.S.C. 523(a)(2)(A), 11 U.S.C. §523(a)(4), and/or 11 U.S.C. §523(a)(6).

**WHEREFORE**, the Plaintiff respectfully demands as set forth in its Prayer For Relief below.

## Claims Under 11 U.S.C. §727

16.     Isaacs Cars realleges each and every one of the allegations set forth in Paragraphs 1 through 15 herein.

17.     In his Schedule C to the Voluntary Petition filed by Ken in the above-captioned bankruptcy of Ken, Ken listed ownership of property at 15511 Dawson Hill Place, Louisville,

Kentucky (the "15511 Dawson Hill Property") with a Current Value of $261,390.

18. On or about August 15, 2005, Ken signed a General Warranty Deed for the 15511 Dawson Hill Property which was recorded in Deed Book 8683, Page 0003 in the Office of the Clerk of Jefferson County and which contained the following statement: "All parties each certify that the fair market value of this property is $603,570." A copy of the General Warranty Deed is attached hereto as **Exhibit 10** and incorporated herein by reference.

19. Upon information and belief formed after inquiry reasonable under the circumstances, Ken knowingly and fraudulently and intentionally misrepresented the value of the 15511 Dawson Hill Property in or in connection with his bankruptcy case and his misstatements are a "false oath or account" under 11 U.S.C. §727(a)(4)(A).

20. On or about April 21, 2008, AutoSource filed a Chapter 7 bankruptcy case in the United States Bankruptcy Court for the Western District of Kentucky, Case No. 08-31656.

21. Ken is an "insider" of AutoSource within the meaning of 11 U.S.C. §727(a)(7).

22. Upon information and belief formed after inquiry reasonable under the circumstances, after April 21, 2008, Ken has improperly handled the assets of AutoSource by, in addition to any other improprieties that the evidence may show: (i) failing to account for insurance proceeds on a damaged vehicle located on the business premises of AutoSource on or about April 21, 2008, (ii) continuing to conduct a truck rental business from the business premises of AutoSource without properly accounting for the same, (iii) continuing to receive installment payments from customers of AutoSource. Such mishandling includes not keeping full and complete records of the same so that AutoSource's condition or business transactions might be ascertained and/or using for his personal benefit such funds as he receives which are the property of AutoSource.

19. The actions described above constitute grounds to deny Ken a discharge under 11 U.S.C. §727(a)(4)(A) and/or 11 U.S.C. §727(a)(7) .

8

**WHEREFORE**, the Plaintiff respectfully demands as set forth in its Prayer For Relief below.

## Prayer For Relief

**WHEREFORE**, the Plaintiff respectfully demands as follows:

A. That it be awarded judgment against the Defendant, Kenneth R. Woods, for the amounts set forth in numerical paragraph 12 above, and that said amounts be adjudged to be excepted from discharge;

B. That Defendant, Kenneth R. Woods, be denied a discharge;

C. Any and all other relief to which it may appear to be entitled, including reasonable attorneys' fees and costs; and,

D. Leave to amend its pleadings as the proof develops or as may otherwise be necessary or appropriate.

        Respectfully submitted,

        MORGAN & POTTINGER, P.S.C.

        By: /s/ M. Thurman Senn
           M. Thurman Senn
           601 West Main Street
           Louisville, Kentucky 40202
           (502) 589-2780
           mts@morganandpottinger.com
        *Counsel for Plaintiff,*
          *Isaacs Isaacs Cars, Inc. f/k/a Autorama, Inc.*