## REVOLVING FLOOR PLAN LOAN AND SECURITY AGREEMENT

This Revolving Floor Plan Loan and Security Agreement ("Agreement") is made and entered into this ___1ˢᵗ___ day of April, 1999, between **AUTOSOURCE-USA, LLC**, 6904 Preston Highway, Louisville, Kentucky 40214 ("Dealer"), and **AUTORAMA, INC.**, 6515 Old Shepherdsville Road, Louisville, Kentucky 40218 ("Lender").

**WHEREAS,** Dealer engages in the business of purchasing used cars, trucks, and other vehicles (collectively referred to hereinafter as "vehicles") for the purpose of resale, and Dealer wants Lender to finance Dealer's purchase of such vehicles.

**NOW, THEREFORE, IT IS AGREED AS FOLLOWS:**

1.    **Advances.**   Lender may from time to time advance sums of money to Dealer for the purpose of enabling Dealer to purchase vehicles, provided, however, that lender with or without cause may refuse to advance any such sum of money; and provided further, that any such advance for vehicles shall not exceed 100% of Dealer's acquisition cost, as represented by invoice, from a recognized auto auction or new car dealer. The aggregate unpaid balance of all such advances shall not exceed, at any one time, $ _100,000.00_ , or such different amount as Lender shall establish from time to time, in writing, with Dealer.

Dealer will execute in favor of Lender such documents as Lender may require in regard to each advance with respect to each vehicle, and Dealer will execute such additional documents as Lender may request to confirm or perfect Lender's title or security interest in the vehicles. Dealer authorizes Lender, and appoints Lender as Dealer's limited power of attorney, to execute such documents on behalf of Dealer and supply any omitted information and correct errors in any documents executed by or on behalf of Dealer. Dealer agrees to hold all vehicles and proceeds thereof in trust until complete payment of the indebtedness to Lender respecting such vehicles, and

EXHIBIT ___1___

vehicles, and Lender's title, lien, or security interest shall not be impaired by any payment to the seller or anyone else, in whole or in part, by Dealer, either of the invoice price or the amount of Dealer's obligation to Lender, or Dealer's failure to refuse to account to Lender for proceeds.

2.    **Repayment Terms**.  Dealer shall pay to the order of Lender the aggregate amount of advances by Lender on behalf of Dealer, together with interest thereon and other changes as follows:

(a)    Interest and Other Charges.

(i)    Dealer shall pay Lender a flat charge for each vehicle financed by Lender in the amount of $100.00.  The flat charge is due upon Lender's initial advance on any vehicle and shall not be affected by the number of days that the advance remains unpaid.  The flat charge shall be in addition to interest charged on the amounts advanced by Lender.

(ii)    Dealer shall pay interest on all amounts outstanding during the period in which they are outstanding, computed upon the average daily balance calculated as follows: the total of sums outstanding on the 5th, the 15th, and the 25th calendar day of each month, divided by three (3).  Interest will be charged at a rate of 1% per month on the average daily balance calculated by the method set out hereinabove.

(b)    Statements and Due Date.

(i)    Lender shall submit a statement to Dealer once each month setting forth the interest and flat charges due for the previous month, and payment shall be due within ten (10) days after receipt thereof.

(ii)    Notwithstanding anything contained in this Agreement to the contrary, the unpaid balance of each advance shall be paid in full within sixty (60) days from

2

the date of the advance. Lender has the right to waive this due date, but no such waiver on any one or more occasions shall be interpreted as a waiver of right to demand payment within sixty (60) days from the date of the initial advance on any vehicle.

3.    **Grant of Security Interest**.   Dealer grants to Lender a security interest in all of its inventory of used cars, trucks, trailers, motor vehicles, and all other vehicles, and all parts, accessories and furnishings used in connection therewith, including all goods hereafter added to or acquired in replacement of the foregoing goods; all whether now existing or hereafter acquired; and the proceeds of all of the foregoing. Property in which Dealer has granted Lender a security interest is collectively referred to hereinafter as the "Collateral". The Collateral shall secure prompt payment of all sums of money, the performance of all obligations, now or hereafter due from Dealer to Lender.

4.    **Dealer's Covenants**.

(a)    Dealer shall keep the Collateral at 6904 Preston Highway, Louisville, Kentucky, or at such other place as Lender may approve in writing.

(b)    Dealer shall not, except as permitted under Paragraph 7, sell, transfer, lease, mortgage or otherwise dispose of the Collateral, or any part thereof, or any interest therein, or remove the collateral from such premises or attempt any such sell, transfer, lease, mortgage, removal, lease, mortgage, removal or disposition of the Collateral without the prior written consent of Lender.

(c)    Dealer shall comply with, and not permit any violation of all applicable laws, ordinances, regulations and orders of all public authorities relating to the Collateral.

(d)     Dealer shall keep and maintain the Collateral in good repair, and safe condition, not alter or substantially modify the Collateral, nor conceal the Collateral, nor, except for Collateral on which Lender has not made an advance, permit any lien or encumbrance at any time to accrue thereon.

5.     **Representations and Warranties**.  Dealer represents and warrants that at the present time and, at the time of each advance by Lender to Dealer, that:

(a)     Dealer has full title to the Collateral.

(b)     Dealer has full right and power to grant the security interest granted herein to Lender.

(c)     The vehicles on which Lender specifically advances are and shall remain free and clear of al liens, claims, and encumbrances whatsoever, except for the security interest granted herein, or, in the alternative, Lender shall have a first priority, purchase money, security interest in the vehicles on which Lender has advanced..

6.     **Taxes and Insurance**.  Dealer shall pay all taxes and assessments at any time levied on the Collateral as and when the same become due and payable and shall keep the collateral insured against such risks and in such amounts as Lender may from time to time require and with such insurers as Lender may from time to time approve.  Such policies shall show Lender as a loss payee as its interest may appear, and policies will be delivered to Lender together with appropriate evidence that the premium therefor has been paid.  If Dealer fails to pay such premiums, Lender may pay them, and the amounts so advanced shall be additional indebtedness secured hereunder.

7.     **Sales of Inventory**.  Unless and until an event of default shall have occurred, Dealer may sell its inventory of vehicles (as described in Paragraph 3) to buyers in the regular course of Dealer's business, but nothing herein shall be deemed to waive or release any interest Lender may

4

have hereunder or under any other agreement in any proceeds of such inventory, including any accounts receivable, chattel paper, security agreements, instruments, contract rights, documents and general intangibles. Upon any sale of such inventory Dealer shall forthwith, but in no instance more than two (2) business days following sale, pay over to Lender an amount equal to the unpaid balance of the amount advanced with respect to the item of inventory sold; provided however, that if Dealer is in default, Dealer shall pay over forthwith the entire proceeds of such sale, but if in default, Dealer shall not be authorized to sell such inventory without prior separate consent of Lender. Lender shall have the right to inspect any or all Collateral at all reasonable times.

8.    **Events of Default**.   The following are events of default hereunder:

(a)    default in the payment of indebtedness or in the performance of any obligations of Dealer hereunder or otherwise;

(b)    any warranty, representation or statement made by Dealer in connection with this Agreement or otherwise is false or has been breached in any material respect;

(c)    loss, theft, damage, destruction, sale (except as permitted in Paragraph 7) or encumbrance of the Collateral, or the making of any levy, seizure or attachment thereon;

(d)    inability of Dealer to pay debts as they mature, insolvency, appointment of a receiver for Dealer, assignment for the benefit of creditors by Dealer, commencement of any proceeding under any bankruptcy or insolvency law by or against Dealer, or any order of attachment, execution, sequestration or other order in the nature of a writ is levied on the Collateral; or

(e)    dissolution, merger or consolidation, or transfer of any substantial part of the property of Dealer; or

5

(f)    revocation by any guarantor of their personal guaranty of the obligations of Dealer to Lender under this Agreement.

9.    **Other Secured Parties**.  Should Dealer have previously granted a security interest in the Collateral to any other lender, or, with Lender's written authorization, grant a security interest in any of the Collateral to another lender, Dealer specifically authorizes Lender to share information with any other lender to Dealer in regard to the specific vehicles on which each lender has made advances.  Dealer understands that Lender will notify any secured party that has filed a financing statement in the name of Dealer of Lender's purchase money security interest in the vehicles.

10    **Remedies**.  Whenever a default shall occur, or at any time thereafter (such a default not having previously been cured), Lender at its option and without demand or notice of any kind, may declare the indebtedness to be immediately due and payable.  Upon default, Lender shall have the remedies of a secured party under the Uniform Commercial Code of Kentucky with respect to the Collateral and all other security pursuant to any other agreements between Lender and Dealer.  In addition, Lender may take possession of the Collateral and such other security by any means not involving a breach of the peace and to sell the same, and for such purpose, Lender may enter upon the premises on which the Collateral or other security shall be situated and remove the same to such other place as Lender shall determine.  Dealer shall, upon Lender's demand, make the Collateral or other security available to Lender at a place to be designated by Lender which is reasonably convenient to both parties.  If any notice is required by law, such notice shall be deemed reasonably and properly given if mailed, postage prepaid, to the address of Dealer at least five (5) days before the event with respect to which notice is required.

In the event of any default, Dealer shall pay all costs incurred in enforcing Lender's rights hereunder, including those incurred in bankruptcy proceedings, expense of locating the goods,

6

and reasonable attorney fees and legal expenses. The security interest granted herein shall be deemed to secure, in addition to all other such of money the repayment of all such costs of collection and enforcement, all amounts expended by Lender on behalf of Dealer, and all other amounts owing by Dealer to Lender.

11. **Termination**. This Agreement shall remain effective until terminated by written notice by either party to the other. No termination shall relieve Dealer from any obligation to Lender arising out of Lender's advances or commitments made prior to the effective date of termination.

12. **General**. This Agreement supersedes all previous contracts, security agreements, and loan agreements between Dealer and Lender covering the same subject, and shall govern Dealer's indebtedness to Lender now outstanding under such prior agreement or hereafter incurred under this Agreement. Time shall be of the essence hereof. Any delay on the part of Lender in the exercise of any right or remedy shall not operate as a waiver thereof. The covenants and conditions of this Agreement shall apply to and be binding upon the heirs, executors, administrators, successors and assigns of Dealer and shall inure to the benefit of Lender and its successors and assigns. This Agreement has been delivered in the Commonwealth of Kentucky and shall be construed in accordance with the laws thereof.

AUTOSOURCE-USA, LLC

By: _____
    Gerald T. Woods

Title: _____

AUTORAMA, INC.

By: _____
    Patricia L. Isaacs
    President

7

## PERSONAL GUARANTY and SUBORDINATION AGREEMENT

In consideration of the extension of credit by Lender to Dealer, the undersigned, each being principals, directors, officers, or members of Dealer, jointly and severally, hereby unconditionally, absolutely and personally guarantee prompt payment to Lender of all sums due Lender from Dealer under the Revolving Floor Plan Loan Security Agreement hereinabove. The liability of the undersigned is primary and direct and shall not be affected by the liability of any other party or the availability of Collateral, or by any extension of time for payment or by delay by Lender in enforcement of payment or other rights including the repossession of Collateral. This is a continuing guaranty and, until Lender receives notice that is has been revoked, it shall cover all future indebtedness of Dealer to Lender arising under the Agreement. The undersigned hereby subordinate to Lender any now existing or hereafter arising indebtedness of Dealer to the undersigned and agree that in the event of default by Dealer in payment to Lender, that thereafter no sums shall be paid by Dealer to the undersigned and any sums received by the undersigned from Dealer shall be held by the undersigned in trust for the benefit of Lender.

Gerald T. Woods

Kenneth R. Woods

:\jb\wpdocs\isaacs\autosource

8